IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Bill Elgin, ) | |
| ) | C.A. No. 6:06-2095-HMH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Aetna Life Insurance Company ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Bill Elgin's ("Elgin") declaratory judgment action under a plan governed by ERISA.[1]  Pursuant to 29 U.S.C. § 1132(a)(1)(B), Elgin seeks a declaration that Aetna Life Insurance Company ("Aetna") is not entitled to offset his long term disability ("LTD") benefits by the amount of workers' compensation ("WC") benefits he recovered.  In addition, Elgin and Aetna seek attorney's fees and costs pursuant to 29 U.S.C.§ 1132(g).  (Joint Stipulation ¶ 1.)  The parties have filed a joint stipulation ("J.S.") and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases.  The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda.  (Id. ¶ 8.)

The parties agree that a modified abuse of discretion standard applies in the instant case.  (Id. ¶ 3.)  The parties dispute whether Aetna is entitled to offset Elgin's LTD benefits by his WC benefits in the amount of $13,096.54 when the physical basis for the LTD benefits

---

[1]Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

1

being paid by Aetna is different than the physical basis which gave rise to the WC benefits. (Id. ¶ 7.) For the reasons below, the court finds that Aetna is entitled to offset Elgin's LTD benefits with his WC benefits in the amount of $13,096.54.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts in this case are undisputed. Elgin was employed with Michelin North America, Inc. ("Michelin") and participated in the LTD plan established by Michelin and insured by Aetna (the "Plan"). (Def.'s Mem. Supp. J. 4.) In 2005, Elgin filed a claim for LTD benefits based on a rotator cuff tear in his shoulder. (Id. 4; Pl.'s Mem. Supp. J. 1.) In October 2005, Aetna approved Elgin's claim and began paying monthly LTD benefits to Elgin. (Def.'s Mem. Supp. J. 4; J.S. Ex. B (Admin. R. at Bates ## 3520239, 3520248, 3520253).)

At the time Elgin filed his claim for LTD benefits with Aetna, he was receiving weekly WC benefits from Michelin based on his diagnosis of carpal tunnel syndrome. ("CTS"). (J.S. Ex. B (Admin. R. at Bates ## 3520200, 3520240).) In addition, Elgin began receiving WC benefits based on his shoulder injury. (Id. Ex. B (Admin. R. at Bates ## 3520200, 3520240).) Aetna offset Elgin's WC benefits from his monthly LTD benefits. (Id. Ex. B (Admin. R. at Bates ## 3520200, 3520240).)

In January 2007, Elgin settled his WC claims against Michelin for a lump-sum payment. (Id. Ex. B (Admin. R. at Bates ## 3520201, 3520205).) Elgin received $20,000 pursuant to the settlement of his WC claim based on CTS. The settlement agreement designates $6,903.46 as payment for attorneys' fees and costs and the remaining $13,096.54 as payment for a "compromise settlement of future disability benefits . . . ." (Id. Ex. B

(Admin. R. at Bates # 3520203.)  Once Elgin notified Aetna of the settlement of his WC claims, Aetna began offsetting Elgin's LTD benefits with a portion of the benefits Elgin received in the settlement.  (J.S. Ex. B (Admin. R. at Bates ## 3520307-08).)  Elgin does not dispute that Aetna properly offset his LTD benefits with the WC benefits received as a result of his shoulder injury.  (Id. ¶ 7.)  However, Elgin does dispute Aetna's right to offset his LTD benefits with the WC benefits received as a result of his CTS.  (Id.)

> The Plan provides in pertinent part as follows:
>
>> In the first 24 months of a period of disability, you will be deemed to be disabled on any day if:
>>
>> • you are not able to perform the **material duties** of your **own occupation** solely because of: disease or injury; and
>> •your work earnings are 80% or less of your **adjusted predisability earnings**
>>
>> After the first 24 months of a period of disability, you will be deemed to be disabled on any day if you are not able to work at any **reasonable occupation** solely because of:
>>
>> •disease; or
>> •**injury**; and
>> •your work earnings are 50% of less of your **adjusted predisability earnings.**
>>
>> **Essential Functions** - Functions normally required for the performance of an occupation and which cannot be reasonably omitted or modified. However, if you become disabled, MetLife will consider you able to perform Essential Functions at the required pre-disability level if you are working or have the capacity to perform such Essential functions at least 37.5 hours per week.
>
> (Id. Ex. A (Plan at Bates # 3520003).)  Furthermore, the Plan provides as follows:
>
>> The monthly benefit is an amount based on your monthly predisability earnings.  Other income benefits, as defined later, are taken into account.

>                . . . .
>
>    • If other income benefits are payable for a given month:
>        the monthly benefit payable under this Plan for that month will be
>        the lesser of:
>            the Scheduled Monthly LTD Benefit; and
>            the Maximum Monthly Benefit;
>        minus all other income benefits, but not less than the Minimum
>        Monthly Benefit.

(Id. Ex. A (Plan at Bates # 3520005).)

Under the Plan, "other income benefits" are defined in pertinent part as:

>    • Disability, retirement, or unemployment benefits required or provided
>      for under any law of a government. Examples are:
>                . . . .
>        Temporary or permanent, partial or total disability benefits under
>        any state or federal workers' compensation law or any other like
>        law, which are meant to compensate the worker for any one or
>        more of the following: loss of past and future wages; impaired
>        earning capacity; lessened ability to compete in the open labor
>        market; any degree of permanent impairment; and any degree of
>        loss or bodily function or capacity.
>
>    • Disability or unemployment benefits under any plan or arrangement of
>      coverage:
>        as a result of employment by or association with the Employer;

(J.S. Ex. A (Plan at Bates ## 3520005-06).) In addition, the Plan provides that "[o]ther income benefits include those, due to your disability or retirement, which are payable to: you; your spouse; your children; your dependents." (Id. Ex. A (Plan at Bates # 3520006).) Finally, with regard to lump sum payments from WC, the Plan states that

> That part of the lump sum or periodic payment that is for disability will
> be counted, even if it is not specifically apportioned or identified as such.
> If there is no proof acceptable to Aetna as to what that part reasonably is,
> 50% will be deemed to be for disability.

4

(Id. Ex. A (Plan at Bates # 3520007).)

Elgin argues that his WC benefits for his CTS do not fall into the Plan's definition of "other income benefits." (Pl.'s Mem. Supp. J. 14-15.) Thus, Elgin contends that under the terms of the Plan, Aetna cannot offset his LTD benefits with his disability benefits paid pursuant to the settlement of his WC claim based on CTS. (Id. 22.)

## II. DISCUSSION OF THE LAW

### A. Standard of Review

The parties have stipulated that the applicable standard of review is a modified abuse of discretion standard as applied by the United States Court of Appeals for the Fourth Circuit because Aetna administers and insures the Plan. (J.S. ¶ 3.) Under this standard, "the court modifies [the] abuse of discretion standard according to a sliding scale." Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997). "The more incentive for the administrator . . . to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator['s] . . . decision must be and the more substantial the evidence must be to support it." Id. Therefore, in light of the conflict of interest, Aetna's decision is entitled to reduced deference. As such, the decision to offset Elgin's benefits must be examined closely to determine whether Aetna's decision was objectively reasonable.

In determining whether Aetna's decision was reasonable under a modified abuse of discretion standard of review, the Court may consider the following non-exclusive factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fidicuary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether

> the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383, 387 (4th Cir. 2006) (internal quotation marks omitted).

### B. Offset of LTD Benefits

Aetna argues that the unambiguous terms of the Plan require an offset of any WC benefits received by Elgin. (Def.'s Mem. Supp. J. 8-9.) "The plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." Kress v. Food Employers Labor Relations Ass'n, 391 F.3d 563, 568 (4th Cir. 2004) (internal quotations marks omitted). "The award of benefits under any ERISA plan is governed . . . by the language of the plan itself. If the denial of benefits is contrary to the clear language of the Plan, the decision [of the fiduciary] will constitute an abuse of discretion." Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993) (internal quotations marks and citations omitted).

Elgin argues that "[t]he Policy is clear that the Defendant only get credit for that 'part of the lump sum payment [resulting from the WC settlement] that is for disability." (Pl.'s Mem. Supp. J. 15.) Further, Elgin argues that the Plan "does make clear, from its context, that 'disability' is based upon the 'injury' which serves as the basis for the 'disability.'" (Id.) Thus, Elgin asserts that since he is receiving LTD benefits under the Plan solely based on his shoulder injury, Aetna is not entitled to offset Elgin's LTD benefits with the disability portion of Elgin's settlement of his WC claims based on CTS. (Id.) The court disagrees.

6

Under the clear and unambiguous language of the Plan, the LTD benefits received by Elgin are offset by

> Temporary or permanent, partial or total disability benefits under any state or federal workers' compensation law or any other like law, which are meant to compensate the worker for any one or more of the following: loss of past and future wages; impaired earning capacity; lessened ability to compete in the open labor market; any degree of permanent impairment; and any degree of loss or bodily function or capacity.

(J.S. Ex. A (Plan at Bates # 3520005).)

Elgin was awarded disability benefits under the South Carolina Workers' Compensation Act (the "WC Act") by virtue of his employment with Michelin. (Id. Ex. B (Admin. R. at Bates # 3520203).) The WC Act defines "disability" as an "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury . . . ." S.C. Code Ann. § 42-1-120 (1985). Therefore, the portion of Elgin's settlement proceeds devoted to compensating Elgin for future disability benefits and paid pursuant to his WC claim based on CTS falls squarely within the pertinent definition of "other income benefits" set forth above. (J.S. Ex. A (Plan at Bates # 3520005).) Further, no other terms of the Plan render this definition ambiguous or limit the definition to include only benefits paid as a result of the same condition that gives rise to a payment of LTD benefits under the Plan.

Elgin contends that the above provision does not apply to his settlement proceeds, because the provision specifically addressing lump sum payments applies instead. (Pl.'s Reply 1.) Further, Elgin argues that the "Test of Disability" section of the Plan limits the natural and literal definition of the word disability that must be applied throughout the Plan.

7

(Pl.'s Mem. Supp. J. 15; J.S. Ex. A (Plan at Bates # 3520003).)  This argument is without merit.

The Plan provides that "[t]hat part of the lump sum or periodic payment that is for disability will be counted, even if it is not specifically apportioned or identified as such." (J.S. Ex. A (Plan at Bates # 3520007).)  This provision is clearly not meant to supplant or limit the definition of other income benefits.  The section in which the lump-sum provision is found begins with "Aetna will determine other income benefits as follows."  (Id. Ex. A (Plan at Bates # 3520007).)  The lump sum provision merely determines, in pertinent part, how "other income benefits" will be calculated if disability benefits are received as part of a lump-sum payment.  (Id. Ex. A (Plan at Bates # 3520007).)

Further, the "Test of Disability" section provides the test for determining whether a claimant is deemed disabled under the Plan and thus entitled to receive LTD benefits.  This test does not purport to be, and cannot reasonably be construed as, a limited and specific definition of the word "disability" meant to be applied throughout the Plan.

Under the plain language of the Plan, the "Other Income Benefits" section defines the kinds of benefits that will offset Elgin's LTD benefits. Because Elgin's WC benefits fall into this definition and were received in a lump-sum payment, the lump-sum provision clarifies that only that portion of the total payment devoted to disability benefits will offset Elgin's LTD benefits paid under the Plan.  For example, in Elgin's case, the portion of his lump sum payment devoted to disability benefits was $13,096.54.  (Id. Ex. B. (Admin. R. at Bates # 3520203.)  Therefore, Aetna offset this amount, rather than the entire $20,000 Elgin received in the settlement, from Elgin's LTD benefits received under the Plan.  The lump-sum

8

provision contains no language limiting the definition of the word disability, and the word must be given its "literal and natural meaning." Kress, 391 F.3d at 568 (internal quotation marks omitted). Thus, the provision does not limit offsets to disability benefits received for the same injury as the one giving rise to a claim under the Plan.

Based on the foregoing, Aetna's decision to offset Elgin's WC benefits against his LTD benefits is consistent with the plain and unambiguous language of the Plan and Aetna's interpretation was consistent with other provisions of the Plan. Therefore, Aetna's decision to offset Elgin's LTD benefits under the Plan with his WC benefits received as a result of his CTS was not an abuse of discretion.

It is therefore

**ORDERED** that Aetna is entitled to offset Elgin's LTD benefits by the WC benefits Elgin received for disability resulting from his CTS.

**IT IS SO ORDERED.**

                                                   s/Henry M. Herlong, Jr.
                                                   United States District Judge

Greenville, South Carolina
March 30, 2007